IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TIFFANY THOMAS o/b/o J.T.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:16cv443-SRW |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**[2]

In this appeal, plaintiff Tiffany Thomas, on behalf of J.T.C., a minor child, challenges the Commissioner's final decision[3] denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* Doc. 1; Doc. 10. In reviewing Administrative Law Judge Ricky V. South's ("ALJ") adverse decision, the court upholds factual findings that are supported by substantial evidence. *See Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). However, no presumption of validity attaches to the ALJ's determination

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is **DIRECTED** to take the appropriate steps to reflect this change on the docket sheet.

[2] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[3] The Appeals Council denied the plaintiff's request for review. *See* R. 1-7. Thus, "the ALJ's ruling must be considered the final decision of the Commissioner of the SSA." *Shinn ex rel. Shinn v. Comm'r Soc. Sec.*, 391 F.3d 1276, 1281 (11th Cir. 2004) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

1

of the proper legal standards to be applied. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius*, 936 F.2d at 1145-46.

In the instant appeal, the plaintiff asks the court to reverse the Commissioner's adverse decision and award benefits or, in the alternative, to remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Doc. 14 at 10. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); Doc. 13; Doc. 14. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be affirmed.

In addition, the plaintiff moves for an award of reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 241(d). *See* Doc. 10 at 7. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), the plaintiff also requests an extension of time to file a motion for attorney's fees under 42 U.S.C. § 406(b). *See id*. These motions will be denied.

## BACKGROUND

### I.     Child Disability

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." *Shinn ex rel. Shinn v. Commissioner of Social Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child

2

is 'doing substantial gainful activity,' in which case [he] is considered 'not disabled' and is ineligible for benefits." *Id.* (citing 20 C.F.R. §§ 416.924(a), (b)). "The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if [he] has 'an impairment or combination of impairments that is severe.'" *Id.* (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." *Id.* (citing 20 C.F.R. §§ 416.911(b), 416.924(d)). This determination is made according to objective criteria set forth in the Code of Federal Regulations ("C.F.R.").

As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. *See id.* § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." *Id.* ("The Listing of Impairments describes ... impairments for a child that cause [ ] marked and severe functional limitations.").
>
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." *Id.* § 416.911(b)(1); *see also* §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." *Id.* § 416.926(a)(2).

*Id.* at 1278-79.

> Finally, even if the limitations resulting from a child's particular impairment[s] are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those

3

in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

  (i)  Acquiring and using information;

  (ii)  Attending and completing tasks;

  (iii)  Interacting and relating with others;

  (iv)  Moving about and manipulating objects;

  (v)  Caring for [one]self; and

  (vi)  Health and physical well-being.

*Shinn*, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." *Id.* (citing 20 C.F.R. § § 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." *Id.* (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).

## II. The ALJ's Findings

J.T.C. was born on July 3, 2007. R. 120. Plaintiff alleged a disability onset date of February 4, 2013.[4] *See* R. 20, 120-25. The ALJ determined that J.T.C. was a preschooler on the date the SSI application was filed and a school-aged child on the date of the ALJ's decision. *See* R. 23 In a written decision issued on September 22, 2014, the ALJ found that

---

[4] The SSI application was filed on the date of the alleged onset of disability – February 4, 2013.

the plaintiff (1) has not engaged in substantial gainful activity since the application date; (2) has severe impairments of attention deficit disorder with hyperactivity ("ADHD") and eczema; and (3) does not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of the listings.[5] *See* R. 20-33. Therefore, he concluded that plaintiff was not disabled, as defined in the Social Security Act, between the application filing date of February 4, 2013 and September 22, 2014, the date of the ALJ's decision. *See id.* at 33.

## DISCUSSION

The plaintiff does not contend that the ALJ failed to adhere to the *Shinn* standards, and the court finds that the ALJ's decision conforms to the legal requirements set out in that binding Eleventh Circuit case. However, plaintiff argues, *inter alia*, that the Commissioner's decision should be reversed or remanded because (1) the ALJ failed to provide a sufficient explanation for the weight assigned to opinion evidence supplied by June Parker, school nurse, *see* R. 192 (Nurse Parker's note); and (2) the Appeals Council erred by denying plaintiff's request for review in light of new evidence submitted after the date of the ALJ's decision. *See* Doc. 10 at 3. The Commissioner maintains that the ALJ applied proper legal principles and that his decision is based on substantial evidence. The court agrees with the Commissioner.

---

[5] The ALJ held a hearing on the application for SSI benefits on June 24, 2014 in Montgomery, Alabama. *See* R. 20. J.T.C. was represented by an attorney at the hearing. *See id.*

## I. The ALJ did not err in his assessment of Nurse Parker's opinion.

The plaintiff argues that reversal or remand is warranted because "the ALJ failed to provide adequate rationale addressing the opinion of J.T.C.'s school nurse …." Doc. 10 at 3. In an undated,[6] handwritten note on school letterhead, Nurse Parker stated that J.T.C. "currently gets Ritalin 5mg … every morning and at lunch time. He still exhibits hyperactivity and behavior issues at school. When in the nurse's office[,] he is into everything and does not stop the behavior when told to do so." R. 192. It is not clear to the court that this note provides opinion evidence, rather than merely representing a report of J.T.C.'s medication schedule and of his behavior at school and in the nurse's office. That distinction, however, is not material, and it is not within the court's purview to resolve. The ALJ concluded that Nurse Parker's "opinion is accorded minimal weight because it is not supported by the remaining evidence of record." R. 26. The plaintiff maintains that an ALJ's finding that a medical source opinion "is not supported by the remaining evidence of record" is insufficient as a matter of law unless the ALJ offers additional explanation or citation to other, contradictory evidence. Doc. 10 at 4 (quoting *Glenn v. Colvin*, 2013 WL 5212407, at *5 (M.D. Ala. Sept. 13, 2013) (finding that such an explanation for rejecting a doctor's medical source opinion merits remand)).

---

[6] The plaintiff claims that the note is dated June 18, 2014. Doc. 10 at 3. However, the Commissioner clarifies that the note was faxed to the Social Security Administration on June 18, 2014 and that there is no indication on the note as to the date it was written. Doc. 11 at 4 and n.1; R. 192. The Commissioner also directs the court to medical evidence of record demonstrating that J.T.C. stopped taking Ritalin on February 14, 2013 – ten days after his alleged disability onset date. Doc. 11 at 4 (citing R. 191, 206). Thus, the note could not have been written on June 18, 2014, based on the evidence in this record. It must have been composed on or before February 14, 2013.

However, *Glenn* is distinguishable from the facts of the instant cause, and the plaintiff's argument is unavailing because the plaintiff fails to differentiate between an "other medical source" and an "acceptable medical source," whose respective medical source opinions are judged by the ALJ under different legal standards. As the Commissioner correctly asserts, a nurse is an "other medical source," not an "acceptable medical source."[7] Doc. 11 at 4-5 (quoting and citing 20 C.F.R. § 416.913 and Social Security Ruling ("SSR") 06-03p, 2006 WL 2263437, at *2). *See also Turner v. Astrue*, 2008 WL 4489933, at *13 (S.D. Ala. Sept. 30, 2008) ("Pursuant to the regulations, a nurse practitioner is not considered 'an acceptable medical source.'") (quoting and citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).

Opinion evidence supplied by an "other source" cannot establish the existence of an impairment, but it can be used to demonstrate the severity of an impairment. *See id.* An ALJ is required to consider the opinion evidence supplied by an "other medical source," and he is entitled to assign weight to the evidence based on a number of factors including consistency with the administrative record as a whole. *See* 20 C.F.R. §§ 416.927(c)(1-6), (f). The ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2). *See also* 20 C.F.R. §§ 416.927(d); 416.913(a)(3).

---

[7] *Glenn* is distinguishable because a physician is an "acceptable medical source." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, the weight assigned by the ALJ to Nurse Parker's opinion is consistent with proper legal principles and is supported by substantial evidence. The fact that the note was written within ten days from the alleged disability onset date, and that the period relevant to this appeal covers five hundred ninety-five days, is sufficient in and of itself to cause Nurse Parker's opinion from early in that term to carry "minimal weight." Also, the ALJ discusses reports from J.T.C.'s teacher, treatment notes, J.T.C.'s good grades, and J.T.C.'s advancement to the next grade in support of his determinations. R. 25-27. Thus, the ALJ's decision to assign "minimal weight" to Nurse Parker's opinion is supported by substantial evidence.

## II. The Appeals Council did not err by rejecting new evidence.

After the ALJ issued the adverse decision on September 22, 2014, the plaintiff submitted additional evidence to the Appeals Council. J.T.C. was admitted to Laurel Oaks Behavioral Health Center from October 13, 2014 until November 3, 2014, and plaintiff provided an "Aftercare Discharge / Transfer Plan" dated November 3, 2014 to the Council. R. 9 J.T.C. was treated for anger and aggression, hallucinations, and homicidal ideations, and those conditions were "resolved" or "partially resolved" with a referral to "aftercare." *Id*. J.T.C. was diagnosed with "Psychosis NOS." *Id.* The record reflects a "past" Global Assessment of Functioning ("GAF") score of 20 and a GAF of 30 upon discharge, but there is no evidence in the "Aftercare Discharge / Transfer Plan" to explain the significance of those scores. *Id.* J.T.C. was discharged to a "less intensive level of care" at "home" with a referral for medical management and therapy. *Id.* Plaintiff was instructed to "display structure in the home such as implementing discipline for inappropriate behaviors" and to

ensure that J.T.C. "engage in prosocial activities to increase social skills and decrease negative behaviors with peers." R. 9.

Plaintiff also submitted school records: Office Referral Forms dated September 23, 2014 ("Defiance of Authority / Willful Disobedience," "Fighting / Physical Aggression," and "Destroying School Property"); October 1, 2014 ("Defiance of Authority / Willful Disobedience," "Continued Disruptive Behavior," "Inappropriate Touching of Another Person," and "Destroying School Property"); and October 13, 2014 ("Defiance of Authority / Willful Disobedience" and "Fighting / Physical Aggression"); and a Bus Discipline Referral Form ("Fighting") dated October 13, 2014. R. 13-16. The school employed a wide range of disciplinary options from individual counseling to suspension. *See id.* The school informed plaintiff of the incidents as well. *See id.*

Plaintiff argues that the new evidence supplements what the plaintiff describes as "symptoms of Psychosis" by J.T.C. prior to the date of the ALJ's written decision. Doc. 10 at 6-7. In support of this argument, the plaintiff directs the court's attention to a Teacher Questionnaire completed by Brenda Gamble on June 19, 2014, approximately two months before the ALJ's decision. *See* R. 247-256. Ms. Gamble's Teacher Questionnaire was made a part of the administrative record before the ALJ reached the adverse disability determination, and he discusses this evidence in the written decision. R. 26. Ms. Gamble reports that J.T.C. talked of "seeing people" who were not "present," and she expresses concern about J.T.C.'s anger when Gamble "tell[s] him no one is there" and indicates that J.T.C. cries "when you don't see who he's talking about." R. 252, 255. Also, the plaintiff

reminds the court that the ALJ summarized plaintiff's hearing testimony that J.T.C. "talks to an invisible person." R. 24.

In denying the request for review of the ALJ's decision, the Appeals Council remarked, in relevant part, that the ALJ "decided your case through September 22, 2014. This new [evidence] is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 22, 2014." R. 2. In referring to Gamble's Teacher Questionnaire and plaintiff's hearing testimony, plaintiff is attempting to establish that the new evidence submitted to the Appeals Council is informative about conditions that predate September 22, 2014.

As a matter of law, the Appeals Council will exercise jurisdiction and review an ALJ's decision if "the Appeals Council receives additional evidence that is new, material, and *relates to the period on or before the date of the hearing decision*, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5) (emphasis added); *see also Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision. The ALJ's decision in this case was rendered on March 28, 1995. While Dr. Felten's opinion one year later may be relevant to whether a deterioration in Anastasia's condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.") (footnotes omitted); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992), *declined to follow on other grounds by Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994)

("Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.") (citing *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)). The court is required to consider the new evidence submitted to the Appeals Council along with the administrative record as a whole and determine whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007) (remanding to the district court to consider whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole, including a psychological report that was submitted to the Appeals Council).

The plaintiff accurately represents that the ALJ based his adverse decision, in part, on the facts that

> the record fails to document disciplinary action in the form of detention, in-school suspension, or suspension, which undermines the alleged severity of the claimant's behavioral problems …. The record also fails to establish that the claimant has required substantial psychiatric treatment which again fails to substantiate the alleged degree of disability. While the claimant continues to have some challenges, he is improving overall.

Doc. 10 at 6 (quoting R. 27).

Arguably, the new evidence could be interpreted by a finder of fact as indicating a deterioration in J.T.C.'s mental health after the date of the ALJ's decision, and the evidence undoubtedly supplies a record of discipline at school at that time. That said, J.T.C.'s post-decision treatment records do not establish that the conditions or their severity existed during a time prior to the date of the ALJ's decision. R. 9-11. Likewise, school discipline records that post-date the ALJ's decision relating to infractions that occurred after the

ALJ's decision do not supply the pre-decision record of school disciplinary action that the ALJ found to be lacking. In other words, the new evidence is not relevant to the time period at issue in the instant appeal – February 4, 2013 through September 22, 2014 – because the evidence and the information contained therein post-dates that time frame.[8]

The plaintiff does not argue that the ALJ's adverse disability determination is not based on substantial evidence in light of the administrative record on the date of the ALJ's decision.[9] *See* Doc. 10. Nevertheless, in accordance with the obligation imposed by *Ingram*, *supra*, the court has independently reviewed the administrative record that was before the ALJ when he reached the adverse disability ruling and the new evidence that the

---

[8] Similar to another Magistrate Judge's observation in a case decided nearly two decades ago, the undersigned notes that, "if, unfortunately, the child's condition deteriorates, another application for benefits can be filed." *Wilson v. Apfel*, 179 F.3d 1276, 1279 n.5 (11th Cir. 1999) (quoting the Magistrate Judge's Recommendation).

[9] The Eleventh Circuit recently reiterated that,

> "To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) (citation omitted); *see also Maradiaga v. United States*, 679 F.3d 1286, 1293-94 (11th Cir. 2012) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties. That federal courts can take notice of [the law] does not mean that a party ... need not cite it to the court or present argument based upon it, or that federal courts must scour the law ... for possible arguments a [party] might have made.") (citation and quotation marks omitted); *cf. In re Antrobus*, 563 F.3d 1092, 1099-1100 (10th Cir. 2009) ("Under our rules we are not permitted to invent arguments even for *pro se* litigants; certainly, we cannot revive ones foregone nearly a year ago by such well-counseled litigants."); *Yeomalakis v. FDIC*, 562 F.3d 56, 61 (1st Cir. 2009) ("It is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief.").

*Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017). Also, "[t]he onus is upon the parties to formulate arguments[.]" *A.L. v. Jackson Cty. Sch. Bd.*, 635 F. App'x 774, 787 (11th Cir. 2015) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

plaintiff submitted to the Appeals Council. The undersigned concludes that the ALJ's written decision is based on substantial evidence.

## CONCLUSION AND ORDER

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be AFFIRMED by a separate judgment.

In addition, it is hereby

**ORDERED** that the plaintiff's motion for an award of EAJA fees and motion for an extension of time to file a motion for an award of attorney's fees pursuant to 42 U.S.C. § 406(b) are **DENIED**. *See* Doc. 10.

Done, on this the 30th day of March, 2018.

/s/ Susan Russ Walker_____
Susan Russ Walker
United States Magistrate Judge